770 F.2d 262
 1986 A.M.C. 326
 In the Matter of the Complaint of RIO GRANDE TRANSPORT,
INC., as Owner of S.S. Yellowstone, For
Exoneration From or Limitation of
Liability, Plaintiff,
In the Matter of the Complaint of COMPAGNIE NATIONALE
ALGERIENNE DE NAVIGATION, as Owner of the
Motorvessel IBN Batouta, For Exoneration
From or Limitation of
Liability, Plaintiff-Appellant,
v.
RIO GRANDE TRANSPORT, INC. and Embassy of Tunisia,
Claimants-Appellees.
 Nos. 84-7896, 84-7898.
 United States Court of Appeals,
Second Circuit.
 Argued May 22, 1985.
Decided Aug. 8, 1985.
 
 Richard H. Brown, Jr., New York City, (Kirlin, Campbell & Keating, Alexander E. Rugani, New York City, of counsel), for plaintiff-appellant.
 William M. Pinzler, New York City, (Leon, Weill & Mahony, Tenzer, Greenblatt, Fallon & Kaplan, Edward L. Sadowsky, Jerome Lipper, New York City, of counsel), for claimant-appellee Tunisia.
 Robert B. Pohl, New York City, (Burlington Underwood & Lord, Richard J. Reisert, New York City, of counsel), for claimant-appellee Rio Grande Transport.
 Before LUMBARD, FRIENDLY, and PRATT, Circuit Judges.
 GEORGE C. PRATT, Circuit Judge:
 
 
 1
 The sole issue before us is whether the district court abused its discretion by awarding prejudgment interest from the dates the parties entered into settlement agreements that neither specified time for payment nor provided for payment of interest. Finding that interest should not have been charged until a reasonable time had elapsed after the agreements were concluded, we reverse and remand for further proceedings.
 
 BACKGROUND
 
 2
 On June 12, 1978, the steamship Yellowstone, owned by Rio Grande Transport ("Rio Grande"), collided off Gibraltar with the motorvessel IBN Batouta, owned by Compagnie Nationale Algerienne de Navigation ("CNAN"). The IBN Batouta was merely damaged, while the Yellowstone, and her cargo of grain, owned by the Embassy of Tunisia and the Office National des Cereales (collectively, "Tunisia"), were totally lost.
 
 
 3
 Rio Grande and CNAN brought separate limitation of liability proceedings in the United States in 1978. On October 17, 1983, the district court entered an order approving an oral agreement whereby Rio Grande and CNAN would each pay Tunisia $900,000 in settlement of the cargo claim (first agreement). On March 26, 1984, CNAN and Rio Grande concluded a separate oral settlement agreement which provided that CNAN would pay Rio Grande $1,316,500 (second agreement). Neither agreement contained any explicit provision for time of payment or payment of interest.
 
 
 4
 Rio Grande paid its portion of the settlement with Tunisia within a week of the first agreement. One of CNAN's underwriters paid Rio Grande a partial payment on the second agreement, leaving a balance due of $839,750. CNAN did not make prompt payment either of the full sum it owed Tunisia on the first agreement or of the balance it owed Rio Grande under the second agreement. In various letters, telexes, and conferences CNAN cited all sorts of administrative and bureaucratic problems in getting funds released by the Algerian government. Finally, at the suggestion of the district court, Tunisia and Rio Grande moved separately to enter judgments on the settlement agreements and to have prejudgment interest awarded from the dates they became effective. Before the motions could be decided, CNAN had paid all but $1,250 of the amounts specified in the settlement agreements.
 
 
 5
 At a September 20, 1984 hearing, the district court orally granted both motions. Later, the court entered judgment on the first agreement, awarding Tunisia prejudgment interest of $79,408.28, calculated from October 17, 1983, (the date of entry of the court order approving the settlement) to September 18, 1984 (the date Tunisia was paid in full), together with postjudgment interest at 11.98% on the $79,408.28 from the date of judgment until the judgment was satisfied.
 
 
 6
 On Rio Grande's motion the court entered judgment on the second agreement: (1) requiring payment of the remaining $1,250 then due; (2) awarding prejudgment interest on the sum of $839,750 from March 26, 1984, (the date of the settlement) to August 30, 1984 (the date of payment of all but $1,250), in the amount of $36,110; (3) awarding prejudgment interest on $1,250 from August 31, 1984, to September 25, 1984, in the amount of $8.90; and (4) awarding postjudgment interest at 11.98% on the combined sum of $37,368.90 from the date of judgment until judgment is satisfied.
 
 
 7
 CNAN has appealed from both judgments.DISCUSSION
 
 
 8
 Although the allowance of prejudgment interest in admiralty rests within the discretion of the trial court, "it should be granted in the absence of exceptional circumstances." Mitsui & Co., Ltd. v. American Export Lines, Inc., 636 F.2d 807, 823 (2d Cir.1981). Recognizing this basic tenet, CNAN does not argue that the district court lacked authority to award prejudgment interest at all. Instead, CNAN attacks the periods for which it was awarded, contending that the district court abused its discretion by imposing prejudgment interest from the date the court approved the settlement with respect to Tunisia, and from the date the parties agreed to settle with respect to Rio Grande.
 
 
 9
 Since neither settlement agreement provided for payment within a specific time, the law implies a requirement to pay within a reasonable time. See Hall v. People to People Health Foundation, Inc., 493 F.2d 311, 313 (2d Cir.1974) (interpreting New York law); Bruce Realty Company of Florida v. Berger, 327 F.Supp. 507, 513 (S.D.N.Y.1971) (same). Both Tunisia and Rio Grande concede that their settlement agreements contemplated payment not immediately but within a reasonable time. They further concede that by not providing for interest in the agreements they, in effect, waived their right to it. They contend, however, that the waiver of interest was implicitly conditioned on payment within a reasonable time, and that once CNAN's delay became so lengthy as to be unreasonable, the condition failed, rendering CNAN liable for interest from the date the settlement agreements first became effective. We find nothing, however, in the settlement agreements or in the applicable law to support this theory of conditional waiver.
 
 
 10
 Tunisia and Rio Grande cite three lower court cases where New York courts, faced with delayed payments of settlement agreements, in fact entered judgments with interest from the dates of settlement. Becker v. City of New York, 78 Misc.2d 325, 356 N.Y.S.2d 503, 505 (Civ.Ct.1974); Tirado v. Gong Cab Corp., 66 Misc.2d 215, 320 N.Y.S.2d 447, 448 (Civ.Ct.1971); McManus v. New York Telephone Company, 14 Misc.2d 22, 176 N.Y.S.2d 380, 384 (Sup.Ct.1958). But these cases provide slim support for the conditional waiver theory. In each the principal issue was whether a judgment should be entered on a mere motion without requiring a plenary suit for breach of the settlement agreement. Interest from the date of settlement was added in each case, apparently as an afterthought, and without comment, analysis, or explanation.
 
 
 11
 Tunisia and Rio Grande recognize that no interest would have been required had the payments been timely; in essence, therefore, they ask us to penalize CNAN for not having made the payments within a reasonable time. But, in admiralty, an award of prejudgment interest is not a punitive measure. Rosa v. Insurance Company of the State of Pennsylvania, 421 F.2d 390, 393 (9th Cir.1970); The West Arrow, 80 F.2d 853, 858 (2d Cir.1936); cf. Chris-Craft Industries, Inc. v. Piper Aircraft Corp., 516 F.2d 172, 191 (2d Cir.1975) (award of prejudgment interest in securities case "must be compensatory and not punitive"); see Annot., 34 A.L.R. Fed. 126, 144 (1977). Rather, prejudgment interest is a form of compensation intended to make the injured party whole. Mitsui & Co., Ltd., 636 F.2d at 824; Rosa, 421 F.2d at 393; The West Arrow, 80 F.2d at 858; see generally, Annot. 34 A.L.R.Fed. 126, 141-144 (1977).
 
 
 12
 In view of the length of time between the settlements and their eventual payments, especially with respect to Tunisia, it appears that CNAN's payments did not arrive within a reasonable time. But injuries to Tunisia and Rio Grande caused by CNAN's delays began only after the delays became unreasonable. Before that time Tunisia and Rio Grande could not have suffered any injury since under the implicit terms of their agreements payments were not yet due. Cf. Independent Bulk Transport, Inc. v. Vessel "Morania Abaco", 676 F.2d 23, 25 (2d Cir.1982).
 
 
 13
 Consequently, in order fully and fairly to compensate Rio Grande and Tunisia for the loss of the use of their funds while awaiting payment, and in order to avoid inflicting an unauthorized penalty on CNAN, the district court should have limited its awards of prejudgment interest to those periods of delay occurring after CNAN had exceeded the reasonable time implicitly granted to it under the settlement agreements.
 
 
 14
 We conclude that the district court abused its discretion by awarding prejudgment interest from the dates the settlements became effective. We therefore reverse and remand with instructions to the district court to modify the prejudgment interest awarded under each judgment, after determining, in view of all the circumstances, including the expectations of the parties at the making of the respective settlement agreements, what constituted reasonable times for CNAN to pay.
 
 CONCLUSION
 
 15
 Both judgments are reversed and the cases are remanded for further proceedings consistent with this opinion.